```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICHARD BARNES,

                        Plaintiff,                    16-cv-2571 (PKC)

            -against-                                 OPINION
                                                      AND ORDER

THE CITY OF NEW YORK, DERRICK
WILLIAMS, MARK MITCHELL, ERIK
HANSEN and "JOHN DOE" #1-7, all in their
individual and official capacities,

                        Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

On the night of May 15, 2015, plaintiff Richard Barnes had a confrontation on West 35th Street with non-party Joselin Cabrero, a woman with whom he was romantically involved. Non-party Toby Mandel Hall, a stranger to both Barnes and Cabrero, observed what he described as an assault by Barnes against Cabrero, and called 911.

Defendants Derrick Williams and Mark Mitchell, who are officers of the New York City Police Department, arrived within minutes. Hall came forward and identified himself as the individual who called 911. He told defendant Williams that Barnes had placed his hands around Cabrero's neck, and that Barnes had been choking, dragging and pushing Cabrero. Barnes was arrested for criminal obstruction of breathing, and thereafter criminally charged pursuant to a complaint signed by Williams. Criminal proceedings against Barnes were later dismissed under New York's speedy trial provisions.

Barnes now brings this action pursuant to 42 U.S.C. § 1983 and New York law. He brings claims of false imprisonment and malicious prosecution under both section 1983 and

New York law and, and a claim of assault and battery under New York law. Discovery is closed and defendants move for summary judgment in their favor.

Because Hall's statements established probable cause as a matter of law to arrest and charge Barnes, the defendants' motion for summary judgment is granted as to Barnes's section 1983 claims. The Court declines to exercise supplemental jurisdiction over Barnes's remaining state law claims.

BACKGROUND.

On the night of May 15, 2015, Barnes drank alcohol and danced with Cabrero at a restaurant and bar called Café Nunez on West 35th Street. (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1.) Barnes and Cabrero were in a romantic relationship. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.) After about an hour, Barnes left Café Nunez, and Cabrero followed him. (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.) Cabrero had consumed several alcoholic beverages. (Def. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5.)

Barnes and Cabrero walked toward the subway entrance on West 35th Street and 8th Avenue. (Def. 56.1 ¶ 6; Pl. 56.1 Resp. ¶ 6.) The two stopped, and Barnes physically grabbed Cabrero; Barnes asserts that he was attempting to help her walk. (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7.) Barnes then "got loud," which he asserts was an effort to prompt Cabrero to respond to his questions about why she was crying. (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8.) A group of onlookers gathered around Barnes and Cabrero. (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.)

A non-party witness, Toby Mandel Hall, testified in his deposition that Barnes "appeared to be pushing" Cabrero into the wall, a characterization that Barnes disputes. (Def. 56.1 ¶ 10; Pl. 56.1 Resp. ¶ 10.) Hall testified that Cabrero seemed to be in distress and was "crying and whimpering," and that Barnes had his hands around Cabrero's neck and was "dragging her," characterizations that Barnes disputes. (Def. 56.1 ¶¶ 13, 14; Pl. 56.1 Resp. ¶¶

13, 14.) Hall testified that Barnes's appeared "to pressure her, to control her, to move her against the building eastward," and that he was speaking and gesturing aggressively, "as if he was berating her." (Def. 56.1 ¶¶ 15-16.) Barnes disputes all of Hall's characterizations. (Pl. 56.1 Resp. ¶¶ 10, 13, 15-16.)

Hall called 911 to report the apparent altercation, and gave a description of the location and persons involved. (Def. 56.1 ¶¶ 17, 19; Pl. 56.1 Resp. ¶¶ 17, 19.)

At approximately 9:20 p.m., defendants Mitchell and Williams were patrolling in a marked police car, when they received a transmission about an assault in progress. (Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) They arrived about five minutes after Hall's 911 call, and testified in their depositions that Barnes was standing in front Cabrero, who was "crying hysterically." (Def. 56.1 ¶¶ 21-23; Pl. 56.1 Resp. ¶¶ 21-23.) Williams testified that it looked like the two were arguing, and that he and Mitchell separated them. (Def. 56.1 ¶¶ 24-25; Pl. 56.1 Resp. ¶¶ 24-25.) Mitchell testified that Cabrero stated, "I just wanted to go home." (Def. 56.1 ¶ 28; Pl. 56.1 Resp. ¶ 28.) Plaintiff Barnes states that he does not recall speaking to any officer, but Mitchell testified that Barnes told him that he and Cabrero were romantically involved. (Def. 56.1 ¶ 33; Pl. 56.1 Resp. ¶ 33.) Mitchell also testified that Barnes told him that Cabrero had not wanted him to leave Café Nunez. (Def. 56.1 ¶ 35; Pl. 56.1 Resp. ¶ 35.) Defendant Erik Hansen, an NYPD patrol supervisor, arrived at the scene, and testified that Barnes yelled to Cabrero, "Don't tell them anything. Tell them nothing happened." (Def. 56.1 ¶ 37; Pl. 56.1 Resp. ¶ 37.)

Hall came forward and identified himself to the officers as the person who called 911, stated that he observed Barnes and Cabrero arguing, and stated that Barnes had "placed his hands around her neck." (Def. 56.1 ¶ 39; Pl. 56.1 Resp. ¶ 39.) Barnes does not dispute that Hall made these statements to Williams, though he disputes their accuracy. (Pl. 56.1 Resp. ¶ 39.)

Hall confirmed that Barnes and Cabrero were the participants in the incident that he described to the 911 operator. (Def. 56.1 ¶ 41; Pl. 56.1 Resp. ¶ 41.)

Hall's statements were recorded in an arrest report and criminal complaint made by Williams. (Def. 56.1 ¶¶ 43-44; Pl. 56.1 Resp. ¶¶ 43-44.) It is undisputed that Hall is the only witness who described Barnes as having choked and dragged Cabrero, and that Williams was the only NYPD officer who spoke to Hall at the scene. (Pl. 56.1 ¶ 65; Def. 56.1 Resp. ¶ 65.)

Defendant Hansen instructed defendant Williams to arrest Barnes for criminal obstruction of breathing, and Williams did so. (Def. 56.1 ¶¶ 47-48; Pl. 56.1 Resp. ¶¶ 47-48.) Barnes was handcuffed, and Williams testified in his deposition that Barnes was acting "[e]rratic, combative," including "yelling and screaming." (Def. 56.1 ¶ 50; Pl. 56.1 Resp. ¶ 50.) Barnes disputes that he behaved in this manner. (Pl. 56.1 Resp. ¶ 50.)

Barnes was transported to the NYPD's Midtown South Precinct. (Def. 56.1 ¶ 51; Pl. 56.1 Resp. ¶ 51.) At the precinct, defendant Williams performed a pat-down search of Barnes. (Def. 56.1 ¶ 52; Pl. 56.1 Resp. ¶ 52.) Cabrero filled out a handwritten statement on a Domestic Incident Report, which stated in part that Barnes "got loud, and that's when people started coming around," and that she wanted to leave but Barnes "kept asking me and grabbing me so I couldn't leave . . . ." (Def. 56.1 ¶¶ 53-55; Pl. 56.1 Resp. ¶¶ 53-55.) At her deposition, Cabrero confirmed the accuracy of her handwritten statement. (Def. 56.1 ¶ 56; Pl. 56.1 Resp. ¶ 56.)

On May 16, 2015, defendant Williams spoke to a Manhattan Assistant District Attorney about the arrest, and signed a criminal complaint charging Barnes with Criminal Obstruction of Breathing or Blood Circulation under New York Penal Law section 121.11(a) and harassment in the second degree under New York Penal Law section 240.26(a). (Def. 56.1 ¶ 57-

58; Pl. 56.1 Resp. ¶ 57-58.) On September 9, 2015, all charges against Barnes were dismissed pursuant to the speedy trial provisions of New York Criminal Procedure Law section 30.30. (Def. 56.1 ¶ 59; Pl. 56.1 Resp. ¶ 59.)

Barnes testified that he sustained bruises to his wrists as a result of being handcuffed. (Pl. 56.1 ¶ 70; Def. 56.1 Resp. ¶ 70.) Barnes was in NYPD custody from May 15 to May 16, 2015. (Def. 56.1 ¶ 60; Pl. 56.1 Resp. ¶ 60.)

Barnes commenced this action on April 6, 2016. (Docket # 1.) He brings claims of false imprisonment and malicious prosecution under 42 U.S.C. § 1983, and asserts municipal liability against the City. (Am. Compl't ¶¶ 40-76.) He also bring claims of assault and battery, false imprisonment and malicious prosecution under New York law. (Id. ¶¶ 77-89.) Discovery in this case is closed.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as

a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

DISCUSSION.

> I. Defendants' Summary Judgment Motion Is Granted as to Barnes's False Arrest Claim.

Count One of the Complaint brings a claim of false imprisonment under 42 U.S.C. § 1983. (Am. Compl't ¶¶ 40-51.) A claim of false arrest and imprisonment "are one and the same" under New York law, and have the same elements under section 1983. Hershey v. Goldstein, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013) (Engelmayer, J.).

A plaintiff asserting false arrest or imprisonment under section 1983 "must show that 'the defendant intentionally confined him without his consent and without justification.'" Dufort v. City of N.Y., 874 F.3d 338, 347 (2d Cir. 2017) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "'Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.'" Id. (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). Probable cause exists if the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances "'that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Id. at 348 (quoting Weyant, 101 F.3d at 852).

Probable cause is a mixed question of law and fact, but "'where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court.'" Id. (quoting Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007)). In this instance, while Barnes disputes the accuracy of Hall's version of events, he does not dispute that Hall called 911, reported an assault in progress, identified himself to the officers upon their arrival, and told defendant Williams that Barnes had placed his hands around Cabrero's neck. (Pl. 56.1 Resp. ¶¶ 17, 19, 38-39, 41.)

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and quotation marks omitted). "More specifically, probable cause exists if a law enforcement officer 'received[] information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity. The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors.'" Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)).

As noted, Barnes was arrested for Criminal Obstruction of Breathing or Blood Circulation, a misdemeanor under New York Penal Law section 121.11, which occurs when an individual "(a) applies pressure on the throat or neck" of a person or "blocks the nose or mouth of such person." Prior to the arrest, Hall, a third-party witness with no relationship to Barnes or Cabrero, told defendant Williams that he had observed that Barnes had "placed his hands around [Cabrero's] neck." (Def. 56.1 ¶ 39; Pl. 56.1 Resp. ¶ 39.) Barnes does not dispute that Hall

provided this description to Williams, although he disputes that his hands were on Cabrero's neck. (Pl. 56.1 Resp. ¶ 39.)

Based on the statements of Hall, a third party with no personal connection to Barnes or Cabrero, the defendants had probable cause to arrest Barnes for the criminal obstruction of breathing or blood circulation, which occurs when an individual "applies pressure on the throat or neck." N.Y.P.L. §121.11. While Barnes disputes that he had, in fact, applied pressure to Cabrero's neck, it was reasonable of the officers to arrest Barnes based on Hall's version of events. Further, because Hall called 911 to report the altercation, and then stepped forward to identify himself to officers as the caller, his statements were entitled to credibility by the arresting officers. See, e.g., Wahhab v. City of N.Y., 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) (call to 911 and separate account volunteered by a witness at the scene established probable cause to arrest plaintiff as a matter of law) (McMahon, J.).

In opposition, Barnes urges that it was unreasonable of the officers to rely on Hall's statements because they were not corroborated by physical evidence, such as red marks on Cabrero's neck, and that the officers did not seek out any footage from nearby surveillance cameras that may have shed light on the circumstances. He also urges that the arrest was unreasonable because Cabrero herself denied that Barnes had choked her.

These arguments do not defeat defendants' summary judgment motion. Hall's accounts to Williams established probable cause as a matter of law. "'[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.'" Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012) (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)). "Once a police officer has a reasonable basis for believing

there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). The evidence cited by Barnes was not sufficient to raise doubts about the veracity of Hall's account. The absence of visible injury to Cabrero, such as red marks on her neck, does not weigh against the reliability and veracity of Hall's account, nor does Cabrero's purported denial that Barnes had choked her. Assuming the truth of Barnes's version of events, the officers were not required to adjudicate the credibility of Hall's statements against Cabrero's denial. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).

Ultimately, the arrest of Barnes was based on the statements and observations of Hall, a non-interested witness who called 911, identified himself to the officers and described Barnes's obstruction of Cabrero's breathing. While Barnes denies that he actually obstructed Cabrero's breathing, the fact of Hall's statements is not in dispute. The Court concludes that, as a matter of law, there was probable cause to arrest Barnes, which precludes Barnes's claim for false arrest. Defendants' summary judgment motion as to the false arrest claim under section 1983 is therefore granted.

> II. Defendants' Summary Judgment Motion Is Granted as to Barnes's Malicious Prosecution Claim.

Barnes asserts that Williams maliciously prosecuted him under section 1983 by signing a criminal complaint to commence proceedings against him. To establish a claim of malicious prosecution under section 1983, Barnes must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor;

(3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendants actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). He must also show a violation of his Fourth Amendment rights. Id. The existence of probable cause is a complete defense to a malicious prosecution claim. Id. at 161-62.

As discussed, defendants have come forward with evidence that establishes probable cause as a matter of law for Barnes's prosecution on the charge of criminal obstruction of breathing or blood circulation. Defendants' motion is therefore granted as to Barnes's claim of malicious prosecution for that crime.

Barnes was also charged separately for harassment in the second degree, pursuant to New York Penal Law section 240.26(1). "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. Penal L. § 240.26. In her handwritten statement completed at the Midtown South Precinct, Cabrero wrote, "I just wanted to go to the train but [Barnes] kept asking me and grabbing me so I couldn't leave." (Def. 56.1 ¶ 55.) This description written by Cabrero is consistent with an intent to harass or annoy her by subjecting her to physical contact. N.Y. Penal L. § 240.26(1). Additionally, it is undisputed that Hall told Williams that Barnes and Cabrero had been arguing and that Barnes had placed his hands around Cabrero's neck, and that Hall described an assault in progress to the 911 operator. (Def. 56.1 ¶¶ 18, 39, 41; Pl. 56.1 Resp. ¶¶ 18, 39, 41.) The criminal complaint signed by Williams cited to Hall's statements. (Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44.) Hall's statements were consistent with an intent to harass or annoy Cabrero by the use of physical contact. The Court therefore concludes that, as a matter of law, there was

probable cause to commence criminal proceeding against Barnes. Defendants' summary judgment motion is therefore granted as to the malicious prosecution claim.

Defendants' motion is separately granted because Barnes has not come forward with evidence of actual malice by Williams as a motivation for commencing criminal proceedings. In a malicious prosecution claim, "malice" is "'a wrong or improper motive, something other than a desire to see the ends of justice served.'" Fulton v. Robinson, 289 F.3d 188, 198 (2d Cir. 2002) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996)). Aside from the purported absence of probable cause, Barnes has not pointed to any improper motive held by Williams.

Defendants' summary judgment motion is therefore granted as to Barnes's malicious prosecution claim under Section 1983.

> III. The Court Declines to Exercise Supplement Jurisdiction over Barnes's Remaining State Law Claims.

Lastly, defendants urge that the Court should not exercise supplemental jurisdiction over plaintiffs' remaining state law claims, or alternatively, if such jurisdiction is exercised, summary judgment should be granted in their favor. Plaintiff's memorandum in opposition does not address the issue of whether the Court should exercise supplemental jurisdiction.

A district court has discretion as to whether it should exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 83 (2d Cir. 2018). Here, the defendants urge that supplemental jurisdiction should not be exercised, and Barnes has not addressed the issue. Thus, both sides have had the opportunity to be heard, and neither has urged that economy,

convenience, fairness or comity weigh in favor of exercising supplemental jurisdiction. See id. at 82-83.

A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie–Mellon University v. Cohill, 484 U.S. 343, 349-50 (1988)).

Here, the Court has dismissed all federal claims. Because the remaining claims assert claims under New York common law, principles of judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over the remaining state law claims and, accordingly, all such claims are dismissed.

CONCLUSION.

The defendants' summary judgment motion is GRANTED. (Docket # 51.) The Clerk is directed to terminate the motion and to enter judgment for the defendants.

SO ORDERED.

                                                                         _____
                                                                         P. Kevin Castel
                                                                         United States District Judge

Dated: New York, New York
       September 7, 2018